**In the Matter of Juanito P. SINGSON and Violeta A. Singson, Debtors.**

**Appeal of LUDWIG & SHLIMOVITZ, s.c.**

**No. 94–2466.**

United States Court of Appeals, Seventh Circuit.

Argued Nov. 2, 1994.

Decided Nov. 29, 1994.

318

Jeffrey D. Nordholm (argued), Ludwig & Shlimovitz, Milwaukee, WI, for debtors-appellants.

John R. Byrnes, U.S. Atty. and Amelia Ramirez (argued), U.S. Dept. of Justice, Office of the U.S. Trustee, Milwaukee, WI, for appellee.

Before CUDAHY, EASTERBROOK, and ROVNER, Circuit Judges.

EASTERBROOK, Circuit Judge.

When the Singsons filed for Chapter 7 bankruptcy, Chief Judge Clevert appointed Douglas F. Mann as trustee, with power to act as his own attorney. Mann later asked the judge to approve the engagement of Ludwig & Shlimovitz, s.c. (L & S) as special counsel for the purpose of opposing the Singsons' attempt to exclude pension assets from the estate. The bankruptcy judge approved this application, which L & S drafted for his signature. Both L & S and Mann treated this order as authorizing L & S to act as general counsel for the estate. On learning that L & S had billed for 71 hours of legal time beyond that necessary to deal with the pension question, the United States Trustee asked the bankruptcy judge to disapprove the request for compensation. Trustee Mann then asked for retroactive approval of L & S's role. After holding an evidentiary hearing, the bankruptcy judge concluded that the law firm's time had been beneficial to the estate but nonetheless denied compensation for any services beyond those authorized in advance. The district court affirmed, reasoning that the "extraordinary situation" necessary for retroactive approval had not been made out.

L & S opposes the interposition of an "extraordinary situation" hurdle for what it calls a *nunc pro tunc* authorization. This phrase—literally "now for then"—refers to situations in which the court's records do not accurately reflect its actions. When the error comes to light, the court corrects the file to show what actually happened. See *King v. Ionization International, Inc.*, 825 F.2d 1180, 1188 (7th Cir.1987); *United States v. Taylor*, 841 F.2d 1300, 1305 (7th Cir.1988). Such a recension is available as a matter of right; no judge would insist on an "extraordinary" justification for conforming the paper record to decisions actually taken. But this

is not what L & S wants. The bankruptcy judge authorized the law firm's engagement for a single purpose; after L & S did work that had not been authorized, it sought payment anyway. This requires not a correction of the records but a brand new substantive decision. So we put the law Latin to one side and ask what standard a court should employ when evaluating such a request.

Section 327(a) of the Bankruptcy Code, 11 U.S.C. § 327(a), provides that a trustee may employ attorneys and other professionals "with the court's approval". It does not say that the approval must precede the engagement, and neither does Fed. R.Bankr. P. 2014(a), which implements § 327(a). Prior approval is strongly preferred because it permits close supervision of the administration of an estate, wards off "volunteers" attracted to the kitty, and avoids duplication of effort. *In re Grabill Corp.*, 983 F.2d 773, 777 (7th Cir.1993); *In re Hydrocarbon Chemicals, Inc.*, 411 F.2d 203, 205 (3d Cir.1969) (en banc). Nothing in the statute forbids or even reproves belated authorization, however; timing is a matter of sound judicial administration rather than legislative command. *Stolkin v. Nachman,* 472 F.2d 222 (7th Cir.1973). Because bankruptcy is a mass-production operation, errors and oversights are inevitable. This counsels against adopting a powerful presumption against belated authorization. An "extraordinary situation" rule would encourage law firms and trustees to devote additional time to punctilious compliance with forms—time for which they would be entitled to compensation. If oversight led to the denial of compensation for significant work, law firms would increase their standard hourly fees, an *ex ante* response to the risk of orders denying compensation *ex post.* Debtors and creditors in the run of cases then would pay indirectly for the time that became unbillable because of record-keeping errors.

Neither the Code nor the Rules of Bankruptcy Procedure suggest that lawyers and other professionals should take extraordinary care to ensure that authorization precedes the rendition of services. Ordinary care—that is, cost-justified precautions—ought to suffice. If the trustee and counsel have taken the appropriate precautions, and something nonetheless goes awry, authorization after the fact is proper. Which is exactly what Rule 9006(b)(1) says. This rule permits the court to permit a party or counsel to take a step, after the time for doing so has expired, "where the failure to act was the result of excusable neglect." Rule 9006(b)(2) says that the court may not enlarge the time specified by seven particular rules; Rule 2014(a) is not on the list. No other provision of the Code implies limits on belated approval. Contrast *In re UNR Industries, Inc.,* 20 F.3d 766 (7th Cir.1994) (the structure of the Code shows that only compelling reasons justify modification of an implemented plan of reorganization). It follows that, when the trustee establishes "excusable neglect," the court may give retroactive authorization under § 327(a) and Rule 2014(a) for the provision of professional services. Accord, *In re Triangle Chemicals, Inc.,* 697 F.2d 1280 (5th Cir.1983). And we know from *Pioneer Investment Services Co. v. Brunswick Associates Limited Partnership,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), that it is possible to show "excusable neglect," as Rule 9006(b)(1) uses that term, without identifying any "extraordinary" circumstance.

We are not persuaded by, and do not follow, cases such as *In re Land,* 943 F.2d 1265 (10th Cir.1991); *In re Arkansas Co.,* 798 F.2d 645, 649 (3d Cir.1986); and *In re Kroeger Properties & Development, Inc.,* 57 B.R. 821 (9th Cir. BAP 1986), that adopt an "extraordinary circumstance" requirement. These opinions do not cite Rule 9006(b)(1). These courts may have thought that the only alternative to an "extraordinary circumstance" requirement is permitting retroactive approval on a showing of "simple neglect," along the lines of *In re Malden Mills, Inc.,* 42 B.R. 476, 484–85 (Bankr.D.Mass.1984), an approach that would undermine the functions served by requiring prior approval. Yet there are many intermediate positions, of which "excusable neglect"—a standard higher than "simple neglect"—is the one specified by the Rules of Bankruptcy Procedure. Only one court that follows the "extraordinary circumstance" approach has grappled with Rule 9006(b)(1). *In re Berman,* 167

B.R. 323 (Bankr.D.Mass.1994), observed that Rule 9006(b)(1) applies "when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court" and noticed that Rule 2014(a) does not itself prescribe any period of time. But unless such a requirement is read into Rule 2014(a) (and § 327), there is no reason to look askance at an application made after the rendering of services. A court may call it "untimely" only by treating Rule 2014(a) as if it set "a specified period of time"—one must get approval before doing the work. When a court implies a requirement as part of a rule, it ought to use the ancillary procedures that govern when the requirement appears expressly. See *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991) (holding that the express periods of limitations in the securities laws apply to rights of action implied by the judiciary).

 Unlike the district judge, the bankruptcy judge employed the "excusable neglect" standard and found that L & S fell short. Appellate review of that decision is deferential, *In re Danielson*, 981 F.2d 296 (7th Cir.1992), and Chief Judge Clevert did not abuse his discretion. Trustee Mann sought, and the judge approved, a limited-purpose appointment. L & S drafted the order and can hardly plead ignorance of its contents. So far as we can see, L & S took no precautions to ensure that its services in this and other cases came within the scope of prior authorizations. L & S and Mann provided duplicative services on at least some matters; double billing is unacceptable. The bankruptcy judge was entitled to conclude that this was not a "harmless neglect." *Grabill*, 983 F.2d at 776. And a pattern of doing work first and seeking approval later—a pattern the bankruptcy judge detected in the Mann–L & S relation—definitely is not "harmless." So there was neglect of the nonexcusable kind. See *Pioneer Investment Services*, — U.S. at — – —, 113 S.Ct. at 1498–1500. L & S acted negligently, and an order denying compensation will induce trustees and professionals to take cost-justified precautions in the future. Debtors and creditors alike will reap the benefits.

Our conclusion that the bankruptcy judge acted within his discretion in denying the application for retroactive approval disposes of any claim under 11 U.S.C. § 503. That section provides for priority payment of administrative expenses, but legal (and other professional) fees during the administration of the estate *become* administrative expenses only to the extent they are approved under § 327 or some other section, such as 11 U.S.C. § 330 or § 1103(a). Nothing in § 503 permits a law firm to recover fees for work that the bankruptcy judge has concluded is noncompensable. *F/S Airlease II, Inc. v. Simon*, 844 F.2d 99, 109 (3d Cir. 1988).

AFFIRMED.