53 F.3d 416
 63 USLW 2674, 33 Collier Bankr.Cas.2d 618,
27 Bankr.Ct.Dec. 213,
Bankr. L. Rep. P 76,481
 In re Donald JARVIS and Joyce Jarvis, Debtors.
 No. 94-2215.
 United States Court of Appeals,
First Circuit.
 Heard April 15, 1995.
Decided April 28, 1995.
 
 Andrew S. Richardson, Trustee in Bankruptcy, with whom Boyajian, Harrington & Richardson, Providence, RI, was on brief, for appellant.
 Robert D. Wieck, Sp. Counsel for the Estate, with whom MacAdams & Wieck, Inc., Providence, RI, was on brief, for appellees.
 Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 SELYA, Circuit Judge.
 
 
 1
 Under 11 U.S.C. Sec. 327(a) and Fed.R.Bankr.P. 2014(a), a Chapter 11 trustee may employ professionals, with the bankruptcy court's approval, to assist him in fulfilling his duties.[1] In this appeal, we uphold a ruling denying an afterthought application for the employment of a professional. In the process, we address two questions of novel impression in this circuit. First, may a bankruptcy court approve a professional's employment when no application is filed until after the services in question have been rendered? Second, if belated applications are cognizable at all, what legal standard should the bankruptcy courts apply in passing upon them?
 
 
 2
 We hold, in general concordance with several other circuits, that a bankruptcy court may grant such a post facto application, but only if it can be demonstrated (1) that the employment satisfies the statutory requirements, and (2) that the delay in seeking court approval resulted from extraordinary circumstances. Relatedly, we hold that tardiness occasioned merely by oversight cannot qualify as an extraordinary circumstance under the second prong of the aforesaid test.
 
 
 3
 * Statement of the Case
 
 
 4
 The material facts are not in dispute. On August 27, 1992, the debtors, Donald and Joyce Jarvis, filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. On February 17, 1993, the bankruptcy court appointed Andrew S. Richardson, a veteran insolvency lawyer, as trustee.
 
 
 5
 In executing his duties, Richardson deemed it desirable to evaluate several parcels of real estate in which the debtors held ownership interests. To this end, he retained Peter Scotti, a prominent Rhode Island appraiser and broker. Although both Richardson and Scotti were familiar with the need for prior judicial approval of professional employment, neither man sought authorization from the bankruptcy court before or during the period in which services were rendered.
 
 
 6
 Scotti did yeoman work for the estate. Among other things, he arranged a sale of a two-acre parcel in Portsmouth, Rhode Island, for $275,000. The bankruptcy court granted Richardson's petition for permission to sell the land and approved the sales agreement (which made provision for a 5% brokerage commission). When the time came to pay the fee, Richardson realized that the court had never authorized Scotti's employment. He then assembled a "Nunc Pro Tunc Application to Employ Broker" and submitted it to the bankruptcy court in a belated effort to remedy the oversight.[2]
 
 
 7
 After holding a hearing, the bankruptcy court found no extraordinary circumstances and denied the application. See In re Jarvis, 169 B.R. 276, 277-79 (Bankr.D.R.I.1994). The trustee appealed to the district court. On October 26, 1994, that court, ruling ore tenus, refused to disturb the bankruptcy court's order. This appeal ensued.
 
 II
 Discussion
 A.
 Post Facto Authorization
 
 8
 In surveying the terrain occupied by section 327(a), the threshold question is whether the statute permits the post facto authorization of professional services at all. Because this inquiry is strictly a matter of statutory construction, our power of interpretive scrutiny is plenary. See, e.g., United States v. Holmquist, 36 F.3d 154, 158 (1st Cir.1994), cert. denied --- U.S. ----, 115 S.Ct. 1797, 131 L.Ed.2d 724 (1995); United States v. Gifford, 17 F.3d 462, 472 (1st Cir.1994); Liberty Mut. Ins. Co. v. Commercial Union Ins. Co., 978 F.2d 750, 757 (1st Cir.1992).
 
 
 9
 If possible, a statute should be construed in a way that conforms to the plain meaning of its text.[3] See, e.g., Estate of Cowart v. Nicklos Drilling Co., --- U.S. ----, ----, 112 S.Ct. 2589, 2594, 120 L.Ed.2d 379 (1992); Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1959, 131 L.Ed.2d 851 (1995); Holmquist, 36 F.3d at 159. When a statute's language is ambiguous, however, a court must often venture into extratextual territory in order to distill an appropriate construction. See Pritzker, 42 F.3d at 67; see also Sullivan v. CIA, 992 F.2d 1249, 1252 (1st Cir.1993) (noting the power of courts to "look behind statutory language" when the legislature "blow[s] an uncertain trumpet").
 
 
 10
 In this instance, the statutory language, for all intents and purposes, is indeterminate. Section 327(a) neither expressly sanctions nor expressly forbids the post facto authorization of outside professional services. Courts have repeatedly remarked this ambiguity. See, e.g., In re Singson, 41 F.3d 316, 319 (7th Cir.1994); In re Triangle Chems., Inc., 697 F.2d 1280, 1289 (5th Cir.1983). What is more, Rule 2014(a) does not fill the void. The most that fairly can be said is that the language of both statute and rule contemplates prior authorization, see Triangle Chems., 697 F.2d at 1284, 1289; Stephen R. Grensky, The Problem Presented by Professionals Who Fail to Obtain Prior Court Approval of Their Employment, 62 Am.Bankr.L.J. 185, 188-89 (1988),[4] without explicitly prohibiting authorization after the fact.
 
 
 11
 The discerned ambiguity in section 327(a) necessarily moves us beyond the four corners of the statute's text. Since there appears to be no explicatory legislative history, we proceed to a consideration of the overarching equitable design of the Chapter 11 process. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, --- U.S. ----, ----, 113 S.Ct. 1489, 1495, 123 L.Ed.2d 74 (1993). Bankruptcy courts, after all, are courts of equity, traditionally governed by equitable principles. See, e.g., Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966); In re Arkansas Co., 798 F.2d 645, 648 (3d Cir.1986); Triangle Chems., 697 F.2d at 1288. In light of the purposefully nonmechanical nature of equity, we think it is appropriate that bankruptcy courts should be permitted to entertain post facto applications for professional services under section 327(a). We so hold, thereby joining several of our sister circuits. See, e.g., Singson, 41 F.3d at 319-20; In re Land, 943 F.2d 1265, 1267-68 (10th Cir.1991); In re F/S Airlease II, Inc., 844 F.2d 99, 105 (3d Cir.), cert. denied, 488 U.S. 852, 109 S.Ct. 137, 102 L.Ed.2d 110 (1988); In re THC Fin. Corp., 837 F.2d 389, 392 (9th Cir.1988); Triangle Chems., 697 F.2d at 1289.
 
 B.
 Nature of the Power; Standard of Review
 
 12
 Because the bankruptcy court's power to entertain belated applications for the employment of professionals is equitable in nature, we believe that the court's ultimate decision to grant or deny such applications is necessarily discretionary. The cases and the commentators are in accord. See Arkansas, 798 F.2d at 650; Triangle Chems., 697 F.2d at 1289; see also 2 Lawrence P. King, Collier on Bankruptcy Sec. 327.02, at 327-20 (15th ed. 1995) [hereinafter Collier on Bankruptcy ] ("Generally it has been concluded that bankruptcy courts are empowered with discretion to grant nunc pro tunc retention orders and allow compensation.").
 
 
 13
 By like token, the bankruptcy court's ruling on an attempt to secure post facto approval of an application for the employment of a professional should be reviewed by the district court under the abuse-of-discretion rubric. See Land, 943 F.2d at 1266. In the event of a further appeal, the court of appeals will independently review the bankruptcy court's ruling for abuse of discretion, ceding no special deference to the district court's previous determination. See Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 30 (1st Cir.1994) (describing levels of appellate review in bankruptcy cases).
 
 C.
 The Appropriate Legal Standard
 
 14
 By recognizing the discretionary authority of bankruptcy courts to consider post facto applications under section 327(a), we have reached the end of the beginning rather than the beginning of the end. We must yet select the precise legal yardstick by which such applications are to be measured. We conclude that the applicant must demonstrate both the professional person's suitability for appointment and the existence of extraordinary circumstances sufficient to excuse the failure to file a timely application.[5]
 
 
 15
 A bankruptcy court confronted by a post facto application for the employment of a professional should begin by inquiring into suitability; the timing of the application does not matter unless the court makes a supportable finding that the services were reasonably necessary for the due performance of the trustee's duties, that the professional is licensed or otherwise qualified to render such services, and that the disinterestedness requirements of section 327(a) are not at risk. In other words, the bankruptcy court must satisfy itself that, had the application been filed on time, the court would have authorized the professional's employment then and there.
 
 
 16
 Assuming that the application clears this first hurdle, the bankruptcy court must next, in the exercise of its informed discretion, decide whether the particular circumstances attendant to the application are sufficiently extraordinary to warrant after-the-fact approval. See F/S Airlease II, 844 F.2d at 105. In fleshing out the extraordinary circumstances requirement, the Third Circuit has indicated that bankruptcy courts may consider several factors, including
 
 
 17
 whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; [and] the extent to which compensation to the applicant will prejudice innocent third parties....
 
 
 18
 Id. at 105-06 (quoting Arkansas, 798 F.2d at 650). Although we do not regard this compendium of considerations as exhaustive, it is a useful checklist and we commend it to the bankruptcy courts.
 
 
 19
 The second half of this two-part test has deep roots in both precedent and policy. A virtually unbroken skein of federal appellate cases have determined that "extraordinary circumstances," or something very close thereto, see supra note 5, constitutes the appropriate legal standard. See, e.g., Land, 943 F.2d at 1267-68; F/S Airlease II, 844 F.2d at 105; Triangle Chems., 697 F.2d at 1289; In re Kroeger Properties & Dev., Inc., 57 B.R. 821, 822-23 (9th Cir. BAP 1986); see also 2 Collier on Bankruptcy, supra, Sec. 327.02, at 327-20. Indeed, apart from the Seventh Circuit, which recently adopted a slightly more lenient "excusable neglect" standard, Singson, 41 F.3d at 319-20, those courts of appeals that have considered the matter are consentient in their views. We can discern no basis for rejecting this imposing array of well-reasoned opinions.
 
 
 20
 The policies underlying the Chapter 11 process also favor adoption of the extraordinary circumstances test. Prior approval is to be preferred because it permits the bankruptcy court to supervise the administration of the estate more closely, and minimizes the chance that the court will be confronted with a fait accompli. To achieve these desirable ends, the prior approval requirement must have teeth. A relatively strict standard, such as extraordinary circumstances, serves this purpose. At the same time, it encourages compliance with the statute and eliminates opportunities for manipulation. See id. at 319; see also Kroeger Properties, 57 B.R. at 822-23 (suggesting that restricting post facto authorization to situations involving extraordinary circumstances will curb general nonobservance of section 327(a)'s requirements); see generally 2 Collier on Bankruptcy, supra, Sec. 327.02, at 327-20. Finally, a rule that lends itself to a relatively small number of exceptions will inevitably help to conserve overtaxed judicial resources. We find that these policy considerations point unerringly toward a stricter, rather than a softer, standard.
 
 
 21
 We hold, therefore, that a bankruptcy court may, in its discretion, grant a post facto application for professional services, provided that the applicant can demonstrate, inter alia, the existence of extraordinary circumstances sufficient to justify the application's untimeliness.[6]
 
 D.
 The Merits
 
 22
 Having settled upon the proper legal standard, we make short shrift of the merits of this appeal. We assume arguendo that the bankruptcy court would have authorized the trustee to employ Scotti had a timely request been forthcoming. Withal, no such request was made. Because the trustee's tardiness in seeking approval was due entirely to inadvertence, our inquiry reduces to whether mere oversight falls within the universe of extraordinary circumstances that may justify post facto authorization of a professional's employment. We conclude that it does not.
 
 
 23
 Our conclusion is buttressed by nothing less than logic and experience, on one hand, and by precedent, on the other hand. Logic and experience dictate that if the category of extraordinary circumstances were expanded to include mere oversight, the modifying adjective "extraordinary" would be completely emptied of its meaning. Consequently, the standard itself would be stripped of its efficacy. At some point, one must pause and inquire, like Alice to Humpty Dumpty, whether words are infinitely elastic. See generally Lewis Carroll, Alice in Wonderland 163 (D. Gray ed., 1971) ("When I use a word ... it means just what I choose it to mean--neither more nor less.").
 
 
 24
 The weight of authority pushes in the same direction. Most courts have flatly refused to accept mere oversight, without more, as a legitimate basis for granting post facto approval. See, e.g., Land, 943 F.2d at 1268 ("Simple neglect will not justify nunc pro tunc approval of a debtor's application for the employment of a professional."); Arkansas, 798 F.2d at 651 (holding that "a mere showing of oversight" does not constitute extraordinary circumstances); In re Shirley, 134 B.R. 940, 943 n. 4 (9th Cir. BAP 1992) ("Mere negligence does not constitute an exceptional circumstance justifying the entry of a retroactive order."). But see Triangle Chems., 697 F.2d at 1289. This tenet prevails even though the professional's services have benefitted the estate. See F/S Airlease II, 844 F.2d at 108; In re Grimes, 115 B.R. 639, 649 (Bankr.D.S.D.1990); In re Mason, 66 B.R. 297, 307 (Bankr.D.N.J.1986); In re Ladycliff Coll., 35 B.R. 111, 113 (Bankr.S.D.N.Y.1983); In re Morton Shoe Cos., 22 B.R. 449, 450 (Bankr.D.Mass.1982).
 
 
 25
 To the extent that the outcome of this appeal demands further justification--and we think it does not--it should be noted that, here, the bankruptcy court was not only applying section 327(a) and Fed.R.Bankr.P. 2014(a), but also was applying its own local rule.[7] The significance of this circumstance is three-fold. First, the rule gives plain notice of the "extraordinary circumstances" standard. Second, once local rules have been properly promulgated, lawyers and litigants are duty bound to comply with them. See Air Line Pilots Ass'n v. Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir.1994). Third, a special degree of deference--above and beyond the traditional standards of decisionmaking and appellate oversight--attaches to a court's interpretation of its own local rules. See, e.g., id. (explaining that "[d]istrict courts enjoy broad latitude in administering local rules" and "are entitled to demand adherence to specific mandates contained [therein]"); United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir.) (remarking "the widely-accepted idea that a district court should be accorded considerable latitude in applying local procedural rules of its own making"), cert. denied, 493 U.S. 862, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).
 
 III
 Conclusion
 
 26
 To recapitulate, we hold that under 11 U.S.C. Sec. 327(a) and Fed.R.Bankr.P. 2014(a), a bankruptcy court may, in its discretion, consider an application to approve the employment of a professional even though the professional person's services have already been rendered. But the court should grant the authorization only if it can be shown that the professional person meets all the requirements of section 327(a) and that the untimeliness of the application results from extraordinary circumstances. Because the lack of punctuality in this case was attributable entirely to inadvertence, the district court did not err in affirming the bankruptcy court's denial of the trustee's post facto application. Mere oversight does not fall within the realm of extraordinary circumstances for these purposes.
 
 
 27
 Although we need go no further, we elect to add a final note. We are aware that Scotti rendered valuable services to the estate, and we take no pleasure in denying him the fruits of his labor. But we do what we must, for the greater good lies not in the transient lure of ad hoc decisionmaking, but in the evenhanded application of the rule of law.
 
 
 28
 Affirmed.
 
 
 
 [1]
 The statute provides that
 the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties....
 11 U.S.C. Sec. 327(a) (1988). Bankruptcy Rule 2014(a) implements the statute. It provides in pertinent part that a trustee's application for the employment of a professional person pursuant to section 327(a) shall state, inter alia, "the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation...." Although the statute and the rule operate in tandem, we shall for simplicity's sake refer mainly to the former.
 
 
 [2]
 Although courts and lawyers routinely describe such applications, as did Richardson, by using the appellation "nunc pro tunc," we agree with Judge Easterbrook that such a designation is unfaithful to the accepted usage of that term in connection with the correction of court records. See In re Singson, 41 F.3d 316, 318-19 (7th Cir.1994). To avoid this linguistic snare, we prefer the term "post facto."
 
 
 [3]
 There are, of course, certain exceptions to this rule. See, e.g., United States Nat'l Bank v. Independent Ins. Agents of Am., Inc., --- U.S. ----, ----, 113 S.Ct. 2173, 2186, 124 L.Ed.2d 402 (1993) (discussing "a simple scrivener's error"); Sullivan v. CIA, 992 F.2d 1249, 1252 (1st Cir.1993) (observing exception when an absurd or legally unacceptable result would otherwise obtain). The case at bar does not require us to probe the exceptions to the general rule
 
 
 [4]
 For what it may be worth, we note that Mr. Grensky's article bears the alternative title "Nunc Pro Tunc Est Bunc." While this alternative is rhythmic, the piece is rarely cited in that fashion. Sic biscuitas disintegrat
 
 
 [5]
 In connection with post facto applications, courts appear to use the terms "extraordinary circumstances" and "exceptional circumstances" interchangeably. Compare, e.g., F/S Airlease II, 844 F.2d at 105 (referring to extraordinary circumstances) with, e.g., Triangle Chems., 697 F.2d at 1289 (referring to exceptional circumstances). From all that we can discern, any differences between these terms are semantic and, in this context, we treat them as fungible
 
 
 [6]
 In so holding, we respectfully decline to follow the Seventh Circuit's transplantation of "excusable neglect" from Fed.R.Bankr.P. 9006(b)(1) to Fed.R.Bankr.P. 2014(a). See Singson, 41 F.3d at 319-20. We are both more concerned on policy grounds about the risk of condoning or encouraging any form of neglect and less convinced that the term "excusable neglect" can be coherently administered over time
 
 
 [7]
 The applicable local rule provides in full:
 Absent extraordinary circumstances, nunc pro tunc Applications for appointment of professional persons pursuant to Sections 327 and 1103 of the Bankruptcy Code, and Bankruptcy Rule 2014, will not be considered. An Application is considered timely if it is filed within thirty (30) days of the date of the filing of the petition in bankruptcy or the date the professional commences rendering services, whichever occurs later.
 D.R.I.Bankr.R. 25(A)(1).