USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 94-2215 IN RE: DONALD JARVIS and JOYCE JARVIS, Debtors. __________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Francis J. Boyle, Senior U.S. District Judge] __________________________ __________________________ Before Selya, Circuit Judge,  _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ __________________________ Andrew S. Richardson, Trustee in Bankruptcy, with whom ______________________ Boyajian, Harrington & Richardson was on brief, for appellant. _________________________________ Robert D. Wieck, Special Counsel for the Estate, with whom _______________ MacAdams & Wieck, Inc. was on brief, for appellees. ______________________ __________________________ April 28, 1995 __________________________  SELYA, Circuit Judge. Under 11 U.S.C. 327(a) and SELYA, Circuit Judge. _____________ Fed. R. Bankr. P. 2014(a), a Chapter 11 trustee may employ professionals, with the bankruptcy court's approval, to assist him in fulfilling his duties.1 In this appeal, we uphold a ruling denying an afterthought application for the employment of a professional. In the process, we address two questions of novel impression in this circuit. First, may a bankruptcy court approve a professional's employment when no application is filed until after the services in question have been rendered? Second, if belated applications are cognizable at all, what legal standard should the bankruptcy courts apply in passing upon them? We hold, in general concordance with several other circuits, that a bankruptcy court may grant such a post facto ____ _____ application, but only if it can be demonstrated (1) that the employment satisfies the statutory requirements, and (2) that the  ____________________ 1The statute provides that the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties . . . . 11 U.S.C. 327(a) (1988). Bankruptcy Rule 2014(a) implements the statute. It provides in pertinent part that a trustee's application for the employment of a professional person pursuant to section 327(a) shall state, inter alia, "the specific facts _____ ____ showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, [and] any proposed arrangement for compensation . . . ." Although the statute and the rule operate in tandem, we shall for simplicity's sake refer mainly to the former. 2 delay in seeking court approval resulted from extraordinary circumstances. Relatedly, we hold that tardiness occasioned merely by oversight cannot qualify as an extraordinary circumstance under the second prong of the aforesaid test. I I _ Statement of the Case Statement of the Case _____________________ The material facts are not in dispute. On August 27, 1992, the debtors, Donald and Joyce Jarvis, filed a voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code. On February 17, 1993, the bankruptcy court appointed Andrew S. Richardson, a veteran insolvency lawyer, as trustee. In executing his duties, Richardson deemed it desirable to evaluate several parcels of real estate in which the debtors held ownership interests. To this end, he retained Peter Scotti, a prominent Rhode Island appraiser and broker. Although both Richardson and Scotti were familiar with the need for prior judicial approval of professional employment, neither man sought authorization from the bankruptcy court before or during the period in which services were rendered. Scotti did yeoman work for the estate. Among other things, he arranged a sale of a two-acre parcel in Portsmouth, Rhode Island, for $275,000. The bankruptcy court granted Richardson's petition for permission to sell the land and approved the sales agreement (which made provision for a 5% brokerage commission). When the time came to pay the fee, Richardson realized that the court had never authorized Scotti's 3 employment. He then assembled a "Nunc Pro Tunc Application to Employ Broker" and submitted it to the bankruptcy court in a belated effort to remedy the oversight.2 After holding a hearing, the bankruptcy court found no extraordinary circumstances and denied the application. See In ___ __ re Jarvis, 169 B.R. 276, 277-79 (Bankr. D.R.I. 1994). The __________ trustee appealed to the district court. On October 26, 1994, that court, ruling ore tenus, refused to disturb the bankruptcy ___ _____ court's order. This appeal ensued. II II __ Discussion Discussion __________ A. A. _ Post Facto Authorization Post Facto Authorization ________________________ In surveying the terrain occupied by section 327(a), the threshold question is whether the statute permits the post ____ facto authorization of professional services at all. Because _____ this inquiry is strictly a matter of statutory construction, our power of interpretive scrutiny is plenary. See, e.g., United ___ ____ ______ States v. Holmquist, 36 F.3d 154, 158 (1st Cir. 1994), petition ______ _________ ________ for cert. filed (U.S. Dec. 27, 1994) (No. 94-7485); United States ___ _____ _____ _____________ v. Gifford, 17 F.3d 462, 472 (1st Cir. 1994); Liberty Mut. Ins. _______ __________________ Co. v.Commercial Union Ins. Co.,978 F.2d 750, 757(1st Cir. 1992). ___ _________________________  ____________________ 2Although courts and lawyers routinely describe such applications, as did Richardson, by using the appellation "nunc pro tunc," we agree with Judge Easterbrook that such a designation is unfaithful to the accepted usage of that term in connection with the correction of court records. See In re ___ _____ Singson, 41 F.3d 316, 318-19 (7th Cir. 1994). To avoid this _______ linguistic snare, we prefer the term "post facto." ____ _____ 4 If possible, a statute should be construed in a way that conforms to the plain meaning of its text.3 See, e.g., ___ ____ Estate of Cowart v. Nicklos Drilling Co., 112 S. Ct. 2589, 2594 ________________ _____________________ (1992); Pritzker v. Yari, 42 F.3d 53, 67-68 (1st Cir. 1994), ________ ____ petition for cert. filed, 63 U.S.L.W. 3692 (U.S. Mar. 13, 1995) ________ ___ _____ _____ (No. 94-1517); Holmquist, 36 F.3d at 159. When a statute's _________ language is ambiguous, however, a court must often venture into extratextual territory in order to distill an appropriate construction. See Pritzker, 42 F.3d at 67; see also Sullivan v. ___ ________ ___ ____ ________ CIA, 992 F.2d 1249, 1252 (1st Cir. 1993) (noting the power of ___ courts to "look behind statutory language" when the legislature "blow[s] an uncertain trumpet"). In this instance, the statutory language, for all intents and purposes, is indeterminate. Section 327(a) neither expressly sanctions nor expressly forbids the post facto ____ _____ authorization of outside professional services. Courts have repeatedly remarked this ambiguity. See, e.g., In re Singson, 41 ___ ____ _____________ F.3d 316, 319 (7th Cir. 1994); In re Triangle Chems., Inc., 697 ____________________________ F.2d 1280, 1289 (5th Cir. 1983). What is more, Rule 2014(a) does not fill the void. The most that fairly can be said is that the language of both statute and rule contemplates prior authorization, see Triangle Chems., 697 F.2d at 1284, 1289; ___ _______________  ____________________ 3There are, of course, certain exceptions to this rule. See, e.g., United States Nat'l Bank v. Independent Ins. Agents of ___ ____ ________________________ __________________________ Am., Inc., 113 S. Ct. 2173, 2186 (1993) (discussing "a simple _________ scrivener's error"); Sullivan v. CIA, 992 F.2d 1249, 1252 (1st ________ ___ Cir. 1993) (observing exception when an absurd or legally unacceptable result would otherwise obtain). The case at bar does not require us to probe the exceptions to the general rule. 5 Stephen R. Grensky, The Problem Presented by Professionals Who ____________________________________________ Fail to Obtain Prior Court Approval of Their Employment, 62 Am. ________________________________________________________ Bankr. L.J. 185, 188-89 (1988),4 without explicitly prohibiting authorization after the fact. The discerned ambiguity in section 327(a) necessarily moves us beyond the four corners of the statute's text. Since there appears to be no explicatory legislative history, we proceed to a consideration of the overarching equitable design of the Chapter 11 process. See Pioneer Inv. Servs. Co. v. Brunswick ___ _______________________ _________ Assocs. Ltd. Partnership, 113 S. Ct. 1489, 1495 (1993). ___________________________ Bankruptcy courts, after all, are courts of equity, traditionally governed by equitable principles. See, e.g., Bank of Marin v. ___ ____ ______________ England, 385 U.S. 99, 103 (1966); In re Arkansas Co., 798 F.2d _______ ___________________ 645, 648 (3d Cir. 1986); Triangle Chems., 697 F.2d at 1288. In _______________ light of the purposefully nonmechanical nature of equity, we think it is appropriate that bankruptcy courts should be permitted to entertain post facto applications for professional ____ _____ services under section 327(a). We so hold, thereby joining several of our sister circuits. See, e.g., Singson, 41 F.3d at ___ ____ _______ 319-20; In re Land, 943 F.2d 1265, 1267-68 (10th Cir. 1991); In ___________ __ re F/S Airlease II, Inc., 844 F.2d 99, 105 (3d Cir.), cert. __________________________ _____ denied, 488 U.S. 852 (1988); In re THC Fin. Corp., 837 F.2d 389, ______ ____________________ 392 (9th Cir. 1988); Triangle Chems., 697 F.2d at 1289. _______________  ____________________ 4For what it may be worth, we note that Mr. Grensky's article bears the alternative title "Nunc Pro Tunc Est Bunc." ________________________ While this alternative is rhythmic, the piece is rarely cited in that fashion. Sic biscuitas disintegrat. ___ _________ ___________ 6 B. B. _ Nature of the Power; Standard of Review Nature of the Power; Standard of Review _______________________________________ Because the bankruptcy court's power to entertain belated applications for the employment of professionals is equitable in nature, we believe that the court's ultimate decision to grant or deny such applications is necessarily discretionary. The cases and the commentators are in accord. See Arkansas, 798 F.2d at 650; Triangle Chems., 697 F.2d at 1289; ___ ________ _______________ see also 2 Lawrence P. King, Collier on Bankruptcy 327.02, at ___ ____ _____________________ 327-20 (15th ed. 1995) [hereinafter Collier on Bankruptcy] _______________________ ("Generally it has been concluded that bankruptcy courts are empowered with discretion to grant nunc pro tunc retention orders ____ ___ ____ and allow compensation."). By like token, the bankruptcy court's ruling on an attempt to secure post facto approval of an application for the ____ _____ employment of a professional should be reviewed by the district court under the abuse-of-discretion rubric. See Land, 943 F.2d ___ ____ at 1266. In the event of a further appeal, the court of appeals will independently review the bankruptcy court's ruling for abuse of discretion, ceding no special deference to the district court's previous determination. See Grella v. Salem Five Cent ___ ______ ________________ Sav. Bank, 42 F.3d 26, 30 (1st Cir. 1994) (describing levels of _________ appellate review in bankruptcy cases). C. C. _ The Appropriate Legal Standard The Appropriate Legal Standard ______________________________ 7 By recognizing the discretionary authority of bankruptcy courts to consider post facto applications under ____ _____ section 327(a), we have reached the end of the beginning rather than the beginning of the end. We must yet select the precise legal yardstick by which such applications are to be measured. We conclude that the applicant must demonstrate both the professional person's suitability for appointment and the existence of extraordinary circumstances sufficient to excuse the failure to file a timely application.5 A bankruptcy court confronted by a post facto ____ _____ application for the employment of a professional should begin by inquiring into suitability; the timing of the application does not matter unless the court makes a supportable finding that the services were reasonably necessary for the due performance of the trustee's duties, that the professional is licensed or otherwise qualified to render such services, and that the disinterestedness requirements of section 327(a) are not at risk. In other words, the bankruptcy court must satisfy itself that, had the application been filed on time, the court would have authorized the professional's employment then and there.  ____________________ 5In connection with post facto applications, courts appear ____ _____ to use the terms "extraordinary circumstances" and "exceptional circumstances" interchangeably. Compare, e.g., F/S Airlease II, _______ ____ _______________ 844 F.2d at 105 (referring to extraordinary circumstances) with, ____ e.g., Triangle Chems., 697 F.2d at 1289 (referring to exceptional ____ _______________ circumstances). From all that we can discern, any differences between these terms are semantic and, in this context, we treat them as fungible. 8 Assuming that the application clears this first hurdle, the bankruptcy court must next, in the exercise of its informed discretion, decide whether the particular circumstances attendant to the application are sufficiently extraordinary to warrant after-the-fact approval. See F/S Airlease II, 844 F.2d at 105. ___ ________________ In fleshing out the extraordinary circumstances requirement, the Third Circuit has indicated that bankruptcy courts may consider several factors, including whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; [and] the extent to which compensation to the applicant will prejudice innocent third parties . . . . Id. at 105-06 (quoting Arkansas, 798 F.2d at 650). Although we ___ ________ do not regard this compendium of considerations as exhaustive, it is a useful checklist and we commend it to the bankruptcy courts. The second half of this two-part test has deep roots in both precedent and policy. A virtually unbroken skein of federal appellate cases have determined that "extraordinary circumstances," or something very close thereto, see supra note ___ _____ 5, constitutes the appropriate legal standard. See, e.g., Land, ___ ____ ____ 943 F.2d at 1267-68; F/S Airlease II, 844 F.2d at 105; Triangle _______________ ________ Chems., 697 F.2d at 1289; In re Kroeger Properties & Dev., Inc., ______ ______________________________________ 57 B.R. 821, 822-23 (Bankr. 9th Cir. 1986); see also 2 Collier on ___ ____ __________ Bankruptcy, supra, 327.02, at 327-20. Indeed, apart from the __________ _____ Seventh Circuit, which recently adopted a slightly more lenient 9 "excusable neglect" standard, Singson, 41 F.3d at 319-20, those _______ courts of appeals that have considered the matter are consentient in their views. We can discern no basis for rejecting this imposing array of well-reasoned opinions. The policies underlying the Chapter 11 process also favor adoption of the extraordinary circumstances test. Prior approval is to be preferred because it permits the bankruptcy court to supervise the administration of the estate more closely, and minimizes the chance that the court will be confronted with a fait accompli. To achieve these desirable ends, the prior ____ ________ approval requirement must have teeth. A relatively strict standard, such as extraordinary circumstances, serves this purpose. At the same time, it encourages compliance with the statute and eliminates opportunities for manipulation. See id. ___ ___ at 319; see also Kroeger Properties, 57 B.R. at 822-23 ___ ____ ___________________ (suggesting that restricting post facto authorization to ____ _____ situations involving extraordinary circumstances will curb general nonobservance of section 327(a)'s requirements); see ___ generally 2 Collier on Bankruptcy, supra, 327.02, at 327-20. _________ ______________________ _____ Finally, a rule that lends itself to a relatively small number of exceptions will inevitably help to conserve overtaxed judicial resources. We find that these policy considerations point unerringly toward a stricter, rather than a softer, standard. We hold, therefore, that a bankruptcy court may, in its discretion, grant a post facto application for professional ____ _____ services, provided that the applicant can demonstrate, inter _____ 10 alia, the existence of extraordinary circumstances sufficient to ____ justify the application's untimeliness.6 D. D. _ The Merits The Merits __________ Having settled upon the proper legal standard, we make short shrift of the merits of this appeal. We assume arguendo ________ that the bankruptcy court would have authorized the trustee to employ Scotti had a timely request been forthcoming. Withal, no such request was made. Because the trustee's tardiness in seeking approval was due entirely to inadvertence, our inquiry reduces to whether mere oversight falls within the universe of extraordinary circumstances that may justify post facto ____ _____ authorization of a professional's employment. We conclude that it does not. Our conclusion is buttressed by nothing less than logic and experience, on one hand, and by precedent, on the other hand. Logic and experience dictate that if the category of extraordinary circumstances were expanded to include mere oversight, the modifying adjective "extraordinary" would be completely emptied of its meaning. Consequently, the standard itself would be stripped of its efficacy. At some point, one must pause and inquire, like Alice to Humpty Dumpty, whether  ____________________ 6In so holding, we respectfully decline to follow the Seventh Circuit's transplantation of "excusable neglect" from Fed. R. Bankr. P. 9006(b)(1) to Fed. R. Bankr. P. 2014(a). See ___ Singson, 41 F.3d at 319-20. We are both more concerned on policy _______ grounds about the risk of condoning or encouraging any form of neglect and less convinced that the term "excusable neglect" can be coherently administered over time. 11 words are infinitely elastic. See generally Lewis Carroll, Alice ___ _________ _____ in Wonderland 163 (D. Gray ed., 1971) ("When I use a word . . . _____________ it means just what I choose it to mean neither more nor less."). The weight of authority pushes in the same direction. Most courts have flatly refused to accept mere oversight, without more, as a legitimate basis for granting post facto approval. ____ _____ See, e.g., Land, 943 F.2d at 1268 ("Simple neglect will not ___ ____ ____ justify nunc pro tunc approval of a debtor's application for the employment of a professional."); Arkansas, 798 F.2d at 651 ________ (holding that "a mere showing of oversight" does not constitute extraordinary circumstances); In re Shirley, 134 B.R. 940, 943 ______________ n.4 (Bankr. 9th Cir. 1992) ("Mere negligence does not constitute an exceptional circumstance justifying the entry of a retroactive order."). But see Triangle Chems., 697 F.2d at 1289. This tenet ___ ___ _______________ prevails even though the professional's services have benefitted the estate. See F/S Airlease II, 844 F.2d at 108; In re Grimes, ___ _______________ ____________ 115 B.R. 639, 649 (Bankr. D.S.D. 1990); In re Mason, 66 B.R. 297, ___________ 307 (Bankr. D.N.J. 1986); In re Ladycliff Coll., 35 B.R. 111, 113 _____________________ (Bankr. S.D.N.Y. 1983); In re Morton Shoe Cos., 22 B.R. 449, 450 ______________________ (Bankr. D. Mass. 1982). To the extent that the outcome of this appeal demands further justification and we think it does not it should be noted that, here, the bankruptcy court was not only applying section 327(a) and Fed. R. Bankr. P. 2014(a), but also was 12 applying its own local rule.7 The significance of this circumstance is three-fold. First, the rule gives plain notice of the "extraordinary circumstances" standard. Second, once local rules have been properly promulgated, lawyers and litigants are duty bound to comply with them. See Air Line Pilots Ass'n v. ___ _____________________ Precision Valley Aviation, Inc., 26 F.3d 220, 224 (1st Cir. _________________________________ 1994). Third, a special degree of deference above and beyond the traditional standards of decisionmaking and appellate oversight attaches to a court's interpretation of its own local rules. See, e.g., id. (explaining that "[d]istrict courts enjoy ___ ____ ___ broad latitude in administering local rules" and "are entitled to demand adherence to specific mandates contained [therein]"); United States v. Diaz-Villafane, 874 F.2d 43, 46 (1st Cir.) ______________ ______________ (remarking "the widely-accepted idea that a district court should be accorded considerable latitude in applying local procedural rules of its own making"), cert. denied, 493 U.S. 862 (1989). _____ ______ III III ___ Conclusion Conclusion __________  ____________________ 7The applicable local rule provides in full: Absent extraordinary circumstances, nunc pro tunc Applications for appointment of professional persons pursuant to Sections 327 and 1103 of the Bankruptcy Code, and Bankruptcy Rule 2014, will not be considered. An Application is considered timely if it is filed within thirty (30) days of the date of the filing of the petition in bankruptcy or the date the professional commences rendering services, whichever occurs later. D.R.I. Bankr. R. 25(A)(1). 13 To recapitulate, we hold that under 11 U.S.C. 327(a) and Fed. R. Bankr. P. 2014(a), a bankruptcy court may, in its discretion, consider an application to approve the employment of a professional even though the professional person's services have already been rendered. But the court should grant the authorization only if it can be shown that the professional person meets all the requirements of section 327(a) and that the ___ untimeliness of the application results from extraordinary circumstances. Because the lack of punctuality in this case was attributable entirely to inadvertence, the district court did not err in affirming the bankruptcy court's denial of the trustee's post facto application. Mere oversight does not fall within the ____ _____ realm of extraordinary circumstances for these purposes. Although we need go no further, we elect to add a final note. We are aware that Scotti rendered valuable services to the estate, and we take no pleasure in denying him the fruits of his labor. But we do what we must, for the greater good lies not in the transient lure of ad hoc decisionmaking, but in the __ ___ evenhanded application of the rule of law. Affirmed. Affirmed. ________ 14