**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 23-1856**

---

BYRON F. DAVID,

> Debtor - Appellant,

v.

DONALD F. KING,

> Trustee - Appellee.

---

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria.  Patricia Tolliver Giles, District Judge.  (1:22-cv-01053-PTG-IDD)

---

Argued:  March 19, 2024                         Decided:  July 26, 2024

---

Before WILKINSON, RICHARDSON, and QUATTLEBAUM, Circuit Judges.

---

Reversed and remanded with instructions by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Richardson joined. Judge Wilkinson wrote a dissenting opinion.

---

**ARGUED:**  James Paul Campbell, CAMPBELL FLANNERY, P.C., Leesburg, Virginia, for Appellant.  Alexander McDonald Laughlin, ODIN, FELDMAN & PITTLEMAN, P.C., Reston, Virginia, for Appellee.  **ON BRIEF:**  Matthew L. Clark, CAMPBELL FLANNERY, P.C., Leesburg, Virginia, for Appellant.

QUATTLEBAUM, Circuit Judge:

This appeal turns on a single question. Does § 327(a) of the Bankruptcy Code permit a *former* trustee to file a *post-hoc* application to retroactively employ professionals corresponding with the time he previously held fiduciary office? Because it does not, we reverse the district court's contrary decision.

## I. Background

### A. The Bankruptcy Code and Bankruptcy Rules

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007) (quoting *Grogan v. Garner,* 498 U.S. 279, 286–87 (1991)). A debtor begins that journey by filing a bankruptcy petition, which "suspend[s] the normal operation of rights and obligations between the debtor and his creditors." *In re Fontainebleau Hotel Corp.*, 508 F.2d 1056, 1059 (5th Cir. 1975); *see* 11 U.S.C. § 301.[1] The debtor's case then begins under one of the Code's six operative chapters.

Though bankruptcy cases are filed under a specific operative chapter, they do not always remain there. Bankruptcy cases may, under certain circumstances, be transferred to another chapter in a process called conversion. In fact, this appeal involves a case that transitioned through three operative chapters: Chapter 7, Chapter 11 and Chapter 13.

---

[1] Unless noted otherwise, all statutory references will be to Title 11 of the United States Code.

It began under Chapter 7. Cases under Chapter 7 permit debtors to turn over certain nonexempt assets to a Chapter 7 Trustee who liquidates those assets for the benefit of creditors. §§ 701–84. In return, debtors receive a discharge of their debts. *Marrama*, 549 U.S. at 367. From Chapter 7, this case was converted to Chapter 11. Chapter 11 cases set up a framework for the reorganization of debts. *See* §§ 1101–74. Filing a petition under Chapter 11 creates an estate consisting of all the debtor's assets. *See* § 541. The newly created "estate is the pot out of which creditors' claims are paid." *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 373 (2019). Finally, this case was converted from Chapter 11 to Chapter 13. Chapter 13 cases afford "individuals receiving regular income an opportunity to obtain some relief from their debts while retaining their property." *Bullard v. Blue Hills Bank*, 575 U.S. 496, 498 (2015). "To proceed under Chapter 13, a debtor must propose a plan to use future income to repay a portion (or in the rare case all) of his debts over the next three to five years." *Id.* "If the bankruptcy court confirms the plan and the debtor successfully carries it out, he receives a discharge of his debts according to the plan." *Id.* So unlike the debtor in a Chapter 7 case, the Chapter 13 debtor is permitted to "maintain possession of some or all of his assets throughout the bankruptcy; the debtor's plan payments (and thus the payments to his creditors) typically come from his future earnings." *In re Cumbess*, 960 F.3d 1325, 1331 (11th Cir. 2020).

Bankruptcy trustees can have different roles under each of these chapters. In Chapter 7 cases, the trustee acts as the primary liquidator of anything the debtor is not entitled to keep. Every Chapter 7 case has a trustee, who is generally selected by the United States Trustee. *See* §§ 701–02. In contrast, in Chapter 11 cases, the estate can be administered by

3

either the debtor himself or a Chapter 11 Trustee. As a result, the appointment of a trustee is discretionary. *See* §§ 1101, 1107. Chapter 11 Trustees may be appointed sua sponte by the bankruptcy court, or upon motion by the U.S. Trustee or another party in interest. *See* § 1104. But such appointment is rare due to the "strong presumption" that the debtor should be allowed to retain possession. *See In re Marvel Ent. Grp., Inc.*, 140 F.3d 463, 471 (3d Cir. 1998) (appointment of Chapter 11 Trustee "should be the exception, rather than the rule"). Chapter 13 cases, in turn, are more like Chapter 7. That is, every Chapter 13 case has a trustee. *See* § 1302; *Hamilton v. Lanning*, 560 U.S. 505, 508 (2010). Chapter 13 Trustees take on an administrative role, collecting funds from the debtor and paying out funds to the creditors in accordance with the confirmed Chapter 13 Plan. *See* § 1302. The Chapter 13 Trustee has broad duties, again similar to the Chapter 7 Trustee, and is also selected by the U.S. Trustee. *See id.*

This appeal involves a specific power of trustees that is not limited to cases brought under any one of these chapters—the power to employ professionals to assist the trustee in his duties. Our consideration of this power features three sections of the Bankruptcy Code.

First, § 327(a) "allows bankruptcy trustees to hire attorneys, accountants, and other professionals to assist them in carrying out their statutory duties." *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 124 (2015). In full, that provision states that "[e]xcept as otherwise provided in this section, *the trustee*, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title." § 327(a)

4

(emphasis added). Providing logistical support, Federal Rule of Bankruptcy Procedure 2014(a) requires the trustee to apply for the bankruptcy court's approval to employ professionals: "An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made *only on application of the trustee* or committee." Fed. R. Bankr. P. 2014(a) (emphasis added). Combining the statute and the rule, to employ a professional, the trustee must apply to the bankruptcy court, and the court must then approve the application.

Second, § 330(a)(1) "regulates court awards of professional fees, including fees for services rendered by attorneys in connection with bankruptcy proceedings." *Lamie v. U.S. Tr.*, 540 U.S. 526, 529 (2004). The statute authorizes the bankruptcy court to award "reasonable compensation for actual, necessary services," along with "reimbursement for actual, necessary expenses," to a professional already employed under § 327(a). § 330(a)(1). So, a professional must first be authorized under § 327. *See Lamie*, 540 U.S. at 538–39 ("If the attorney is to be paid from estate funds under § 330(a)(1) in a Chapter 7 case, he must be employed by the trustee and approved by the court."); *see also id.* at 538 ("[W]e hold that § 330(a)(1) does not authorize compensation awards to debtors' attorneys from estate funds, unless they are employed as authorized by § 327.").

Third, § 348 explains the effect of conversion of a case from one chapter of the Bankruptcy Code to another. 3 *Collier on Bankruptcy* ¶ 348.01 (16th ed. 2024). Section 348(e) provides that "[c]onversion of a case" from Chapter 7, 11, 12 or 13 immediately "*terminates the service of any trustee* or examiner that is serving in the case before such conversion." § 348(e) (emphasis added); *Harris*, 575 U.S. at 519 ("The moment a case is

5

converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that 'service.'").

To sum up these provisions, a trustee may employ a professional person only after the court's approval of an application by the trustee § 327(a); Fed. Bankr. R. P. 2014(a). And following that approval, a professional person may be awarded reasonable compensation for actual, necessary expenses. § 330(a). Finally, upon conversion, the trustee's services are terminated. § 348(e).

With this background in mind, we turn to the facts of this appeal.

### B. David's Bankruptcy Proceedings

In July 2018, Byron David petitioned the bankruptcy court for Chapter 7 bankruptcy relief. The U.S. Trustee appointed Donald King to serve as the Chapter 7 Trustee for the bankruptcy estate. In November 2018, while the case was still in Chapter 7, King applied under § 327(a) for approval to retain a law firm to represent him as the Chapter 7 Trustee. That same month, the bankruptcy court approved King's application.

In April 2019, the bankruptcy court granted David's motion to convert the case from Chapter 7 to Chapter 11. Following that order, King was once again appointed as trustee— this time as the Chapter 11 Trustee. After becoming the Chapter 11 Trustee, however, King never applied under § 327(a) to employ the law firm to represent him during that phase of the case. Naturally, then, the bankruptcy court never approved the law firm's retention. Even so, the law firm provided legal work for King as the Chapter 11 Trustee.

In May 2020, upon David's motion, the bankruptcy court converted the case once again, this time from Chapter 11 to Chapter 13. The conversion order stated that King, "the

6

chapter 11 trustee," was "authorized to file . . . an application to approve the chapter 11 administrative expenses, subject to the rights of all parties to object to such motion and application." J.A. 10. After conversion to Chapter 13, King was not reappointed as the trustee, and another individual was selected instead.

A month after the bankruptcy court converted the case to Chapter 13, which terminated his Chapter 11 Trustee position, King applied for the payment of administrative expenses under § 330. King's application sought $43,598.00 in law firm fees and $70.00 in expenses. Nearly all of those fees and expenses involved work done during the Chapter 11 phase. David objected to King's application, arguing that the law firm was terminated when the case was converted from Chapter 7 to Chapter 11 and never approved by the bankruptcy court to assist King after the conversion.

In September 2020, the bankruptcy court approved payment for the law firm's work during the Chapter 7 phase of the case—when the firm was properly retained. But it denied King's request to pay the law firm for its work during the Chapter 11 phase—when the law firm was not properly retained. It explained that "[a]lthough the Chapter 7 Trustee," King, "sought and obtained this Court's approval to retain [the law firm], the Chapter 11 Trustee," also King, "never did." J.A. 50. The court, therefore, concluded that "because [the law firm] was not retained by the Chapter 11 Trustee, [it could not] be compensated under section 330 for work performed post-conversion." J.A. 50–51. The court, however,

7

granted "leave for the Chapter 7 Trustee and Chapter 11 Trustee to file *nunc pro tunc* employment applications."[2] J.A. 52.

Likely in response to the bankruptcy court's order, in October 2020—almost five months after the Chapter 11 phase of the case had ended—King applied under § 327(a) to retroactively retain the law firm for the Chapter 11 phase and moved for reconsideration of the denial of the law firm's requested fees. David objected again for the same reasons he objected to King's original application to pay the law firm for Chapter 11 work. In November 2020, the bankruptcy court granted King's motion, authorizing King to retroactively employ the law firm. The order stated that "the chapter 11 Trustee is authorized to employ the law firm . . . as attorneys for the Trustee and the estate, effective as of November 12, 2020." J.A. 169.

David moved to alter or amend the order, arguing that the bankruptcy court had committed clear error by approving the application *nunc pro tunc* because § 327(a) does not permit a former trustee to hire professionals. In a February 2021 order, the bankruptcy

---

[2] "Nunc pro tunc literally means 'Now for then.'" *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383 (4th Cir. 2012) (quoting *Maksymchuk v. Frank*, 987 F.2d 1072, 1075 n.2 (4th Cir. 1993)). A *nunc pro tunc* order is used to "correct mistakes or omissions in the record so that the record properly reflects the events that *actually took place*." *Id.* To correct such a mistake or omission, "the court may cause to be made *now*, an entry that shall have the same legal force and effect as if made at the time when it should have been made." *Nunc Pro Tunc*, Black's Law Dictionary (11th ed. 2019) (quoting George L. Phillips, An Exposition of the Principles of Pleading Under the Codes of Civil Procedure § 529, at 560 (1896)); *see also Judgment Nunc Pro Tunc*, Black's Law Dictionary (11th ed. 2019) ("[A] procedural device by which the record of a judgment is amended to accord with what the judge actually said and did, so that the record will be accurate."). A *nunc pro tunc* order "may not be used to retroactively record an event that never occurred or have the record reflect a fact that never existed." *Glynne*, 699 F.3d at 383.

8

court summarily denied David's motion. David then appealed to the Eastern District of Virginia. He raised a "straightforward question of law: whether a Chapter 11 trustee has standing to hire professional persons on behalf of a bankruptcy estate *after* the bankruptcy proceedings have converted from Chapter 11 to Chapter 13." J.A. 241.

The district court vacated the February 2021 order denying David's motion to amend. The court reasoned that the bankruptcy court improperly approved King's application to retain the law firm through November 12, 2020, several months after the case was converted to Chapter 13. By allowing King to employ counsel through this period, the bankruptcy court allowed him "to act on behalf of the bankruptcy estate despite his status as a former trustee." J.A. 252. This, according to the district court, "was clear error that should have been corrected on reconsideration." J.A. 252. However, the district court did not disturb the November 2020 order, which originally granted King's application to retain the law firm. Instead, it vacated only the February 2021 order, which denied David's motion to amend and alter. The district court also remanded the case to the bankruptcy court to "reconsider its November [2020] Order in light of [the district court's] decision." J.A. 255. In a final footnote, the district court noted that "[i]t is worth reiterating that the only error this Court has identified with the bankruptcy court's February [2021] Order is its failure to correct the underlying decision to grant King authority to act on behalf of the bankruptcy estate effective as of November 12, 2020—a date arising four months after his service as trustee for the estate terminated." J.A. 255. It left open the issue of whether King could employ the law firm after-the-fact for work done during the Chapter 11 phase of the case when King was the active trustee.

9

So, the upshot of the district court's decision was that King's retention of the law firm for work done after he had been terminated as the Chapter 7 trustee was improper because the firm was never properly employed during the Chapter 11 phase of the case. But the court left open whether King could retain the law firm after-the-fact for work done during the Chapter 11 phase when he was the active trustee. The court remanded the case to the bankruptcy court to address that issue.

Following the district court's order, in September 2022, the bankruptcy court reconsidered and amended its November 2020 order. Specifically, the bankruptcy court's September 2022 order replaced language authorizing the law firm's employment "effective as of November 12, 2020," J.A. 169, with language approving prior employment of the law firm "with such representation ending on May 21, 2020, the date this case was converted to chapter 13." J.A. 257. Thus, the bankruptcy court approved, retroactively, King's request under § 327(a) to retain the law firm to do the work that it performed during the Chapter 11 phase of the case.

When David appealed this latest order, the district court affirmed it. While recognizing that conversion from Chapter 11 to Chapter 13 terminated King's fiduciary office as Chapter 11 Trustee, the district court explained that the bankruptcy court did not err in approving "the hiring of the [law] firm *retroactively*, covering the time period before the trustee's fiduciary office was terminated." J.A. 291. According to the district court, this approval "[i]n effect, . . . allowed [King] to act on behalf of the bankruptcy estate only for the period he was the acting Chapter 11 trustee." J.A. 291. The district court explained that rather than "broadly empower[ing] a former trustee to seek appointment of counsel for a

10

bankruptcy estate," the September 2022 order "retroactively approved [King's] application for appointment of counsel only for the Chapter 11 phase—i.e., when he was the active trustee." J.A. 293. The district court also held that such an approval did not contravene the Bankruptcy Code and pointed out that David cited no binding precedent prohibiting a bankruptcy court from granting a former trustee leave to apply for the retention of a law firm and payment of that firm for the time the former trustee was the active trustee.

David timely appealed.[3]

## II. Analysis

David's appeal presents a narrow question: may a former trustee—whose services were terminated by virtue of conversion under § 348(e)—apply under § 327(a) for retroactive approval to employ professionals and seek their compensation under § 330 for work performed while he was the acting trustee? We have not addressed this issue previously, nor have any other circuits. However, David's appeal places the question squarely in front of us.

### A.  Text, Context and Common Sense

To answer that question, "[w]e begin our analysis with the statutes' plain language." *Carroll v. Logan*, 735 F.3d 147, 150 (4th Cir. 2013). As a reminder, § 327(a) states in full:

---

[3] We have jurisdiction to review the district court's order under 28 U.S.C. § 1291. We review legal questions, including the interpretation and application of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure, de novo. *In re Johnson*, 960 F.2d 396, 399 (4th Cir. 1992).

11

> Except as otherwise provided in this section, *the trustee*, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

§ 327(a) (emphasis added).

David's argument is straightforward. Relying on § 348(e), David contends that King's status as "the trustee" terminated on May 13, 2020, when the case converted from Chapter 11 to Chapter 13. According to David, King became a "former trustee" the moment the case converted. As a result, David contends that neither § 327(a) nor Rule 2014(a) authorized King to employ professionals. *See* Fed. R. Bankr. P. 2014(a) ("An order approving the employment of attorneys, accountants, appraisers, auctioneers, agents, or other professionals pursuant to § 327, § 1103, or § 1114 of the Code shall be made only on application of *the trustee* or committee." (emphasis added)). Under David's reading, King is a day late and a dollar short.

The text of § 327(a) supports David's argument for three reasons. First, the article "the" before the singular noun "trustee" is significant. Numerically, "the" contemplates that *one* trustee might employ professionals. *See Rumsfeld v. Padilla*, 542 U.S. 426, 434 (2004) (noting that "[t]he consistent use of the definite article in reference" to an object normally "indicates" that the statute refers to only one such object); *see also Davidson v. United Auto Credit Corp.*, 65 F.4th 124, 132 (4th Cir. 2023) ("[T]he Supreme Court has said that sometimes the 'use of the definite article . . . indicates that there is generally only one.'" (quoting *Rumsfeld*, 542 U.S. at 434)); *Kouambo v. Barr*, 943 F.3d 205, 211 (4th Cir. 2019) (noting that usage of "the definite article 'the' in referring to 'the order' of removal"

in various parts of the INA suggests that Congress contemplated "*one* final order of removal" (internal quotations omitted)). *But see NLRB v. Canning*, 573 U.S. 513, 527 (2014) (observing "that the word 'the' in '*the* recess' might suggest that the phrase refers to the single break separating formal sessions of Congress" but ultimately rejecting that position based on historical usage). This reading is consistent with other sections of the Bankruptcy Code that, like § 327(a), contain the phrase "the trustee." *See, e.g.*, § 323(b) ("the trustee" has the capacity to sue and be sued); § 350(a) ("the trustee" must be discharged before the bankruptcy court may close the case); § 363(b) ("the trustee" may use, sell, or lease the debtor's property); § 364(a) ("the trustee" may obtain unsecured credit while operating the debtor's business); § 365(a) ("the trustee" may assume or reject executory contracts or unexpired leases). These provisions only make sense if "the trustee" is read to mean the one current trustee. Otherwise, a bankruptcy case's administration would be thrown into chaos by multiple individuals acting as trustees.

Interpreting "the trustee" to mean a single, current officeholder also makes sense from a temporal standpoint. If Congress intended to include former trustees in § 327(a), it easily could have used words pointing backwards, like "the current or former trustee," to make that intent clear. In fact, while not Congress's language, the Federal Rules of Bankruptcy Procedure do just that. Rule 1019(4), which describes what a *former trustee* must do upon conversion to a Chapter 7 case, provides that "[a]fter qualification of, or assumption of duties by the chapter 7 trustee, *any . . . trustee previously acting* in the chapter 11, 12, or 13 case shall, forthwith, unless otherwise ordered, turn over to the chapter 7 trustee all records and property of the estate . . . ." Fed. R. Bankr. P. 1019(4) (emphasis

13

added). And Rule 1019(5) notes that upon conversion "to chapter 7, . . . *the trustee serving at the time of conversion*, shall: (i) not later than 14 days after conversion of the case, file a schedule of unpaid debts incurred after the filing of the petition and before conversion of the case, including the name and address of each holder of a claim; and (ii) not later than 30 days after conversion of the case, file and transmit to the United States trustee a final report and account . . . ." Fed. R. Bankr. P. 1019(5) (emphasis added). Though it easily could have, Congress employed no such language in § 372(a).

Second, context clarifies that "the trustee" refers to the acting trustee at the time the application is made. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 167 (2012) ("Context is a primary determinant of meaning."). Because "[t]he meaning—or ambiguity—of certain words or phrases may only become evident when placed in context. It is a 'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (internal citation omitted). We "must therefore interpret the statute 'as a symmetrical and coherent regulatory scheme,' and 'fit, if possible, all parts into an harmonious whole.'" *Id.* (internal citations omitted). Examining the context here, verbs surrounding "the trustee" in § 327(a) are in the present tense: "the trustee" "may *employ*" professionals "to *represent* or *assist* the trustee." § 327(a) (emphasis added). Rather than authorizing a trustee to seek the court's approval of a professional he has *employed* or who has previously *represented* or *assisted* him, § 327(a) speaks in the present. This context of present tense words, combined with the context of other Bankruptcy Code provisions that

14

use the phrase "the trustee," indicate that "the trustee" generally refers only to the current trustee.[4]

Third, and finally, reading "the trustee" in § 327(a) to mean the currently serving, active trustee makes sense when read in light of § 348(e). As noted above, that provision immediately terminates the trustee's service and authority to act on behalf of the estate upon conversion. *See Harris*, 575 U.S. at 519; § 348(e). Common sense suggests that someone whose fiduciary office has ended should not be able to employ professional persons to assist them in that office. *See First United Methodist Church of Hyattsville v. U.S. Gypsum Co.*, 882 F.2d 862, 869 (4th Cir. 1989) (recognizing common sense as "the most fundamental guide to statutory construction"). In other words, because "§ 327(a) professionals are hired to serve the administrator of the estate for the benefit of the estate," *Baker Botts L.L.P.*, 576 U.S. at 127, it would be odd to allow someone stripped of authority—and no longer providing services themselves—to make that hiring decision. *Cf. Harris*, 575 U.S. at 519 ("The moment a case is converted from Chapter 13 to Chapter 7, however, the Chapter 13 trustee is stripped of authority to provide that 'service.'"). This is particularly true in this appeal, where not only had King's office terminated, but also another individual had been selected and was serving as the Chapter 13 Trustee at the time of King's § 327(a) application.

---

[4] This is true even though "Congress has specifically instructed that . . . courts should assume that 'words importing the singular include and apply to several . . . things,' 'unless context indicates otherwise.'" *Davidson*, 65 F.4th at 132 (quoting 1 U.S.C. § 1). As noted above, the context here indicates otherwise.

For all these reasons, we agree with David that § 327(a)'s reference to "the trustee" means only the currently serving, active trustee. This shouldn't surprise King, either—for he conceded at oral argument that the text of § 327(a) is most naturally read to encompass only the current trustee. Since King wasn't the current trustee when he sought to employ the law firm, he fell outside of the statute's parameters.[5]

---

[5] Our dissenting colleague sees things differently. He appears to read § 327(a) to permit a former trustee to make an application to the court to hire professionals and then seek payment for those professionals under § 330(a)(1) even after his position as trustee has ended. But even King himself conceded this was the wrong way to read § 327(a). And for good reason. The problems with this reading are quickly apparent. First, it disregards the effect of § 348(e). That provision strips the then-serving trustee of authority to provide any service to the estate "[t]he moment a case is converted . . . ." *Harris*, 575 U.S. at 519. Second, a malleable standard provides little guidance to bankruptcy judges, parties and lawyers. As an example, how long does the former trustee have to submit an application to the bankruptcy court to hire a professional? Chapter 13 cases may go on for five years. Does the Bankruptcy Code permit a motion to hire a professional four years after conversion? While our colleague seems to think the bankruptcy courts are best equipped to untangle those issues, we see no reason to send them a result in need of entanglement. Third, even if nothing in the bankruptcy code expressly *forbids* the bankruptcy court from permitting a former trustee to apply under § 327(a) to employ a professional, that does not mean it "f[alls] within the text's ordinary meaning." Diss. Op. at 26. *See Harrington v. Purdue Pharma L. P.*, No. 23-124, slip op. at 10 (U.S. June 27, 2024) (rejecting an argument that just "because the code does not expressly forbid" a particular type of discharge, "the bankruptcy court was free to authorize one").

Our colleague also believes our conclusion "extends a faux textualism to the point of hollow formalism." Diss. Op. at 27. But steadfast allegiance to Congress's words does not permit us to depart from statutory text based on "equity" or "[i]ntuitions of justice." *Id.* at 25, 27. To the contrary, we must follow the text where it takes us, even if, like here, we do not necessarily like the result. Using equity and justice to bypass statutory language in order to achieve a satisfying result may taste good temporarily. But it opens the door to policy-based decision making that, like eating that second hotdog at a baseball game, often leads to indigestion.

16

B.  King's Arguments

King offers a series of counterarguments as to why, despite the statutory text shutting the door, the bankruptcy court did not err in allowing and approving his retroactive § 327(a) application long after he held fiduciary office. None are persuasive.

1.  Equity

King's primary argument sounds in equity. In particular, King points to the bankruptcy court's ability to approve § 327(a) applications retroactively through the use of so-called *nunc pro tunc* orders.[6] King asserts that bankruptcy courts routinely approve § 327(a) applications filed after the fact.

---

[6] Although bankruptcy courts and lawyers routinely describe such orders as "*nunc pro tunc*," we agree with the First and Seventh Circuits that such a designation is unfaithful to the accepted usage of that term to correct court records. *See In re Singson,* 41 F.3d 316, 318–19 (7th Cir. 1994); *In re Jarvis*, 53 F.3d 416, 418 (1st Cir. 1995). "To avoid this linguistic snare," we use the term "*post-hoc*" or "after-the-fact" application. *In re Jarvis*, 53 F.3d at 418.

This makes all the more sense following the Supreme Court's decision in *Roman Catholic Archdiocese of San Juan, Puerto Rico v. Acevedo Feliciano*, 589 U.S. 57 (2020) (per curiam). There, the Court held that a federal district court's issuance of a "*nunc pro tunc*" order retroactively remanding the case to state court did not retroactively restore the state court's jurisdiction. *Id.* at 64–65. The Court explained that "[f]ederal courts may issue *nunc pro tunc* orders, or 'now for then' orders to reflect the reality of what has already occurred. Such a decree presupposes a decree allowed, or ordered, but not entered, through inadvertence of the court." *Id.* at 65 (internal citations and quotations omitted). "Put colorfully, [n]unc pro tunc orders are not some Orwellian vehicle for revisionist history—creating 'facts' that never occurred in fact." *Id.* (internal quotations omitted). In other words, "the court cannot make the record what it is not." *Id.* (internal quotations omitted). So, while "litigants may still seek entry of nunc pro tunc orders, . . . the Supreme Court made plain that the entry of nunc pro tunc orders is only acceptable if a court makes a ruling but simply fails to enter an order at the time." *In re Coleman*, 655 B.R. 441, 452 (Bankr. N.D. Miss. 2023). That is not the case here, where King altogether failed to file an

17

King is correct that professionals sometimes begin work before receiving the bankruptcy court's approval. As a result, trustees must sometimes apply for retroactive permission to employ their professionals. And many of our sister circuits have affirmed approvals of after-the-fact § 327(a) applications by bankruptcy courts, grounding the practice in the "purposefully nonmechanical nature of equity," *In re Jarvis*, 53 F.3d 416, 419 (1st Cir. 1995), and because "[n]othing in the statute forbids or even reproves belated authorization," *In re Singson,* 41 F.3d 316, 319 (7th Cir. 1994). *See Matter of Triangle Chems., Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983) ("[N]either bankruptcy statute nor rule preclude the bankruptcy judge in the exercise of its sound discretion, and as a court of equity administering equitable principles, from entering an order [*post-hoc*] authorizing the employment of an attorney for the debtor in possession, even after the attorney (who *should* have secured prior approval for his retainer) has performed valuable services for the debtor's estate . . . ."); *see also* 3 *Collier on Bankruptcy* ¶ 327.03 ("Courts also have permitted the use of . . . *post facto* orders to validate a previous failure to obtain the requisite court approval and obviate an oversight that otherwise would result in unfair and inequitable consequences.").

Bankruptcy courts in districts within our circuit have also approved professional fee applications after the fact. *See, e.g.*, *In re Tidewater Mem'l Hosp., Inc.*, 110 B.R. 221, 225 (Bankr. E.D. Va. 1989) ("[M]ost court decisions have recognized the authority of the bankruptcy court under appropriate circumstances to retroactively appoint professionals

---

application for approval under § 327(a) throughout the entirety of the Chapter 11 phase of the case.

18

who fail to obtain prior court approval of employment."); *In re Don's Trucking, Inc.*, No. 96-36286-S, 1997 WL 33807881, at *1 (Bankr. E.D. Va. Sept. 29, 1997) ("Considering that an attorney may not be compensated unless appointed by the court, bankruptcy courts have invoked their equitable powers to permit the retroactive appointment of professionals in certain circumstances to avoid such 'hardship.'").[7] And although we have not addressed the propriety of after-the-fact applications ourselves,[8] we have acknowledged that the Bankruptcy Code "gives broad discretion to the bankruptcy court over the appointment of professionals to work on behalf of the trustee and the estate, in part by empowering the court to approve candidates so selected." *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909 (4th Cir. 1992).

To be sure, if we were permitted to use equity to resolve this appeal, King's argument might be compelling. There is no question that the law firm actually did work for the estate during the Chapter 11 phase of the case. Counsel for David admitted at oral argument that there was no bad faith attempt to hide the ball by the law firm and that the

---

[7] Indeed, much of the debate on the topic does not center on *if* bankruptcy courts are authorized to ever accept after-the-fact applications, but *when* it is appropriate for bankruptcy courts to do so. *See In re Twinton Props. P'ship*, 27 B.R. 817, 819–20 (Bankr. M.D. Tenn. 1983) (proposing a nine-part test for professionals seeking orders with retroactive effect); *In re Tidewater Mem'l Hosp.*, 110 B.R. at 225–26 (setting forth a two-part test for determining when extraordinary circumstances would permit retroactive employment); *Matter of Singson*, 41 F.3d at 319 (establishing an "excusable neglect" standard for when it may be appropriate for courts to give retroactive authorization under § 327).

[8] Since this appeal raises no challenge to the ability of a bankruptcy court to consider and approve after-the-fact applications for current and active trustees, we offer no opinion on that topic.

19

bankruptcy court was well aware of its work. To that end, David does not dispute that his counsel endorsed at least six orders where the law firm was listed as King's counsel. And the Bankruptcy Code even provides a shovel-ready tool—an equitable catchall provision empowering bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out [its] provisions" and to, "sua sponte, tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." § 105(a).

But the problem with this argument is that all the cases relied on by King involve a *current* and *active* trustee filing an after-the-fact application seeking retroactive approval, not a *former* trustee like King. That is, none of those cases recognizing an equitable power of a bankruptcy court to approve a post-hoc application by the current trustee considered the effect of § 348(e) conversion or involved a § 327(a) application by a former trustee. Unlike the cases he cites, King applied for retroactive approval of the law firm's employment even though his position as trustee had already ended and a different individual had been appointed as the Chapter 13 Trustee. We cannot find any basis in the text of § 327(a) or case law to permit such an application.

And as for § 105(a), "the equitable powers emanating from [that provision] are quite important in the general bankruptcy scheme." *Off. Comm. of Equity Sec. Holders v. Mabey*, 832 F.2d 299, 303 (4th Cir. 1987). But "these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules." *Id.* Accordingly, "a court may exercise its equitable power only as a means to fulfill some specific Code provision." *In re Fesco Plastics Corp., Inc.*, 996 F.2d 152, 154 (7th Cir.

20

1993); *see Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988) ("[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code."). So, we cannot use equitable principles to contravene statutory requirements. And at the end of the day, that is what King asks us to do.

Applying § 327(a) as written is not particularly satisfying here. Doing so seems harsh to the law firm and produces an arguable windfall for the estate. But we cannot use equitable principles to rewrite § 327(a). Because King was not "the trustee" at the time he sought to retain the law firm under § 327(a), his equity and discretion-based arguments cannot succeed.

## 2.  May 2020 Conversion Order

Still, King claims that the bankruptcy court's May 2020 order converting the case from Chapter 11 to Chapter 13 "authorized" him to seek bankruptcy court approval of "compensation owed to his professionals." Resp. Br. 6–7. Recall that order "authorized" King "to file a . . . an application to approve the chapter 11 administrative expenses, subject to the rights of all parties to object to such . . . application." J.A. 10.

But nothing in that order authorized King to file a § 327(a) application for the approval of professional persons' employment out of time. At most, that order authorizes King to seek compensation under § 330 for professional persons already approved under a § 327(a) application. And even if read in the way King suggests, that order would be invalid for the reasons already explained. Much like equity, a bankruptcy court order cannot contravene the language of § 327(a).

21

### 3.  Post-Conversion Duties

King claims that a former trustee's ongoing duties after conversion allow him to apply for the employment of professionals under § 327(a). *See* Resp. Br. 13 ("The conversion of the case from chapter 11 to chapter 13 did not vitiate the chapter 11 trustee's authority because Mr. King had continuing duties under the bankruptcy code as chapter 11 trustee during the time period in which he served the bankruptcy estate as trustee."). And it is true that after being terminated, a former trustee may still have residual duties. For example, a former Chapter 13 trustee, upon conversion to Chapter 7, "is required to account for the funds that came into his possession by filing a final report under Federal Rule of Bankruptcy Procedure 1019(5)(B)(ii)." *In re Michael*, 699 F.3d 305, 310 (3d Cir. 2012).

Consistently, King points to his duty to return property following conversion as an example of a continuing responsibility, even as former trustee. King emphasizes the last sentence of § 327(a), which provides that the trustee may hire professional persons "to represent or assist the trustee in carrying out *the trustee's duties under this title*." § 327(a) (emphasis added). Putting these concepts together, King insists that because he had ongoing duties following conversion, he was able to apply for approval to employ a professional under § 327(a).

But like his other arguments, this one runs headlong into the text of § 327(a) and § 348(e). Nothing in § 327(a) permits a former trustee to employ a professional. As already discussed, the language King points to in § 327(a), which allows the trustee to employ professional persons to "represent or assist the trustee in carrying out *the trustee's duties*," only refers to the current and active trustee's duties—not a former trustee's duties. Though

22

a trustee might always encounter some wind-up duty after the case converts to the next phase, § 327(a) applies only to the current and active trustee.[9]

### 4.  Section 348(e)

King asserts that a successive application to employ the law firm was unnecessary because the law firm was properly employed and authorized during the Chapter 7 phase of the case. After conversion from Chapter 7 to Chapter 11, according to King, no additional employment application under § 327(a) was required because King, the now-Chapter 11 Trustee, used the same firm. As support, King points to § 348(e), which provides that a *trustee's* services terminate upon conversion but does not address the termination of *other professionals*. That silence, according to King, means that a second application under § 327(a) to employ the law firm during the Chapter 11 phase was never required.

King's argument misunderstands the effect of conversion. Conversion of a bankruptcy case not only terminates the service of a trustee or examiner under § 348(e) but also the service of his employed professionals. *See Lamie*, 540 U.S. at 532 (noting that conversion from Chapter 11 to Chapter 7 "terminated [the debtor's] status as debtor-in-possession and so terminated [the debtor's counsel's] service under § 327 as an attorney for the debtor-in-possession"); *In re Fontainebleau Las Vegas Holdings, LLC*, 574 B.R.

---

[9] Our decision does not mean that if the former trustee's residual or clean-up duties require assistance of professionals retained while the trustee was the active trustee, those professionals cannot be compensated for their work. In that situation, professionals previously (and properly) approved under § 327(a) should be able to continue work corresponding with the final remaining duties of a former trustee. A harder question arises, although not presented here, if a former trustee's clean up responsibilities require assistance of professionals that were never approved during the time the trustee was the active trustee. But since it is not presented to us, we do not decide it.

895, 901 (Bankr. S.D. Fla. 2017) ("The conversion terminated the appointment of the Examiner and the employment of his professionals."); *In re CK Liquidation Corp.*, 343 B.R. 376, 385 (D. Mass. 2006) ("[The law firm] was terminated under federal law as counsel to the Debtor upon the Conversion Date.").

While the law firm was properly employed with approval during the Chapter 7 phase of the case, the conversion to Chapter 11 terminated King's office as the Chapter 7 Trustee. That also terminated the law firm's role as counsel to the Chapter 7 Trustee. Therefore, King had to again seek § 327(a) approval following his termination as Chapter 7 Trustee and installment as Chapter 11 Trustee. And he did not do so.

## III. Conclusion

Just as all roads led to Rome in ancient times, all King's arguments lead to § 327(a). Section 327(a) does not authorize former trustees, following conversion, to file an after-the-fact application to employ professionals for the period they were trustees. So, we reverse the district court's order finding otherwise and remand to the district court with instructions to send the case back to the bankruptcy court for further proceedings consistent with this opinion.

*REVERSED AND REMANDED WITH INSTRUCTIONS*

24

WILKINSON, Circuit Judge, dissenting:

Bankruptcy courts have long been recognized as "courts of equity" that "appl[y] the principles and rules of equity jurisprudence." *Young v. United States*, 535 U.S. 43, 50 (2002) (Scalia, J.). Bankruptcy courts across the country have exercised their equitable discretion to grant after-the-fact authorizations of professional services already performed under § 327(a). It is the province of bankruptcy courts to decide which professionals a trustee may employ to assist him in carrying out his duties and to determine the value of such services. *In re Harold & Williams Dev. Co.*, 977 F.2d 906, 909–10 (4th Cir. 1992); *Fine v. Weinberg*, 384 F.2d 471, 473 (4th Cir. 1967). The majority would preclude bankruptcy courts from exercising this discretion after a case is converted from one chapter to another. Because the majority reads into the statute a nonexistent limitation on bankruptcy courts' broad discretion over the employment and compensation of professionals, I respectfully dissent.

The question presented here is simple: Can a Chapter 11 trustee seek after-the-fact approval under § 327(a) to employ and compensate a law firm that assisted him during the Chapter 11 phase of the case? Intuitions of justice say "of course." That is especially true where, as here, the law firm was working for the trustee in good faith, with the knowledge and acquiescence of both the bankruptcy court and the debtor.

Moreover, intuition squares with the text of the statute. Section 327(a) of the Bankruptcy Code provides that "the trustee, with the court's approval, may employ" certain professionals "to represent or assist the trustee in carrying out the trustee's duties under this title." "Nothing in the statute forbids or even reproves belated authorization," leaving

25

"timing [as] a matter of sound judicial administration rather than legislative command." *In re Singson*, 41 F.3d 316, 319 (7th Cir. 1994). Here the bankruptcy court "approv[ed]" an application filed by "the trustee" of a Chapter 11 bankruptcy to employ, and hence compensate, a law firm for the work it performed "assist[ing] the trustee in carrying out the trustee's duties" during the Chapter 11 portion of the case. The bankruptcy court's approval thus fell within the text's ordinary meaning.

Donald King was the one and only trustee over the Chapter 11 case. There was no other. Every bit of the work for which compensation was sought was performed during the Chapter 11 phase of the case. When the case converted to Chapter 13, King was automatically terminated as the acting trustee pursuant to § 348(e), but he was still "the trustee" over the Chapter 11 case. When the bankruptcy case converted to Chapter 13, the prior Chapter 11 case did not vanish. To the contrary, the responsibility for wrapping up the Chapter 11 case fell squarely on King, the so-called former trustee. Those responsibilities included paying the administrative expenses (including professional compensation), filing a final report with the bankruptcy court, and turning over the remaining funds to the new trustee. *See* 11 U.S.C. §§ 704(a)(9), 542(a).

The majority's contrary interpretation of § 327(a) makes too much of the words "*the* trustee." The majority reads the provision to limit authority to file employment applications to currently acting trustees and assumes that once a case is converted to another chapter, the trustee of the previous chapter is no longer "the trustee" over that proceeding. It thus lays down a bright-line rule against bankruptcy courts exercising their discretion in professional compensation cases, even though those courts are best positioned to make

26

these evaluations. The majority's reading, on my view, extends a faux textualism to the point of hollow formalism, which, paradoxically, forecloses more natural textual readings. When equity merges with textualism, we shouldn't pass it up.

What is more, bankruptcy courts have traditionally been guided by "equitable principles." *In re Arkansas Co.*, 798 F.2d 645, 648 (3d Cir. 1986). Indeed, many of our sister circuits have endorsed bankruptcy courts' equitable discretion to grant after-the-fact authorizations of professional services already performed under § 327(a). *See, e.g.*, *In re Jarvis*, 53 F.3d 416, 419–20 (1st Cir. 1995) (concluding that because "[b]ankruptcy courts, after all, are courts of equity," "the court's ultimate decision to grant or deny such applications is necessarily discretionary"); *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1282 (5th Cir. 1983) (rejecting "a per se rule not to allow compensation for attorney's fees" upon after-the-fact application and holding that a bankruptcy court may grant such late applications under "its powers as a court in equity"); *In re Atkins*, 69 F.3d 970, 973 (9th Cir. 1995) ("The bankruptcy courts in this circuit possess the equitable power to approve retroactively a professional's valuable but unauthorized services."); *Singson*, 41 F.3d at 319 (same); *Arkansas Co.*, 798 F.2d at 648 (same).[10]

Although none of those cases concerned an application made by what the majority calls a "former trustee," they support the proposition that bankruptcy courts have equitable

---

[10] The majority opinion pleads for "guidance" on the matter of approval of attorney's fees. Maj. Op. at 16 n.5. That, of course, is not the way the system works. Trial courts routinely exercise discretion in their review of attorney's fees, which appellate courts routinely review for abuse. Trial courts have the best sense of the matter. Appellate courts, not to mention Congress, would go crazy trying to draft the detailed "guidance" the majority demands. Their indigestion would far precede the second dog.

27

discretion when evaluating after-the-fact applications for professional fees under § 327(a). And the majority would agree that "equitable concerns weigh in favor of granting retroactive approval to enable deserving professionals to recover compensation for work actually done." *Arkansas Co.*, 798 F.2d at 648; *see* Maj. Op. at 19 ("There is no question that the law firm actually did work for the estate during the Chapter 11 phase of the case."); *id.* at 21 (conceding that the result reached by the majority "seems harsh to the law firm and produces an arguable windfall for the estate").

Yet the majority's per se rule, which fixates on the status of the trustee *at the time of application* rather than *when the work was performed*, would bar these lawyers from getting paid under any circumstances. I would not adopt that rigid reading of § 327(a), which firmly closes off the path to fair compensation for attorney work already performed simply because the trustee who oversaw that work is no longer the active trustee.

If the application is in some way undeserving, the bankruptcy court can exercise its equitable discretion to deny it. But a bright-line rule is both textually and practically untenable. Bankruptcy courts can be busy places. "[E]rrors and oversights are inevitable. This counsels against adopting a powerful presumption against belated authorization." *Singson*, 41 F.3d at 319. Rather than divest bankruptcy courts of their equitable discretion when considering fee applications like the one before us, I would leave open a path to fair compensation for work fairly done. An honest day deserves an honest dollar.

28